1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NORTHWEST ADMINISTRATORS INC., | CASE NO. 2:23-cv-252 |
| Plaintiff, | ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT |
| v. | |
| NATIONAL CONVENTION SERVICES LLC, a New York liability company, | |
| Defendant. | |

## 1.  INTRODUCTION

Before the Court is Plaintiff Northwest Administrators Inc.'s motion for default judgment against Defendant National Convention Services, LLC ("NCS"). Dkt. No. 9. NCS has not appeared in this action and did not file a response to the motion. *See generally* Dkt. The Court has considered the motion, the remaining record, and applicable law and GRANTS Northwest Administrators' motion for default judgment.

## 2. BACKGROUND

Northwest Administrators is the authorized administrative agent and assignee of the Western Conference of Teamsters Pension Trust (the "Trust"). Dkt. No. 5 at 1. The Trust operates under the Labor Management Relations Act ("LMRA") to provide retirement benefits to eligible participants. *Id.* NCS is bound to a collective bargaining agreement ("CBA") with Local 631 of the International Brotherhood of Teamsters under which NCS is required to pay monthly contributions to the Trust. Dkt. Nos. 5 at 2; 12-2; 12-3.

The CBA sets forth the contribution rate that NCS must pay on an employee's behalf on a dollars-per-hours-worked basis. Dkt. No. 12-3 at 57. The specific terms of the Trust are found in the Trust Agreement and incorporated by reference in the CBA. *Id.* at 55.  By accepting the Trust Agreement, NCS agreed to pay the Trust liquidated damages of 20 percent of all late-paid contributions and interest at varying annual rates as well as reasonable attorneys' fees. Dkt. Nos. 9 at ¶ 9; 10-2 at 14.

Northwest Administrators alleges that NCS made delinquent payment of its Trust contributions for October 2022 over two months late. Dkt. Nos. 9 at ¶ 10-11; 12-4 at 2. In addition, NCS failed to make required contributions for November 2022 of $65.58. Dkt. Nos. 9 at ¶ 9;12-4 at 2. Northwest Administrators further alleges that NCS is liable for $133.35 in liquidated damages and $9.56 in pre-judgment interest. Dkt. Nos. 9 at ¶ 14; 12-4. Northwest Administrators also seeks to recover $1,509.00 in attorney's fees and $532.00 in litigation costs.  Dkt. Nos. 9 at ¶ 12; 9-3 at 2-3.

## 3.  DISCUSSION

### 3.1  Legal Standard

Under Rule 55, the default process occurs in two steps. First, if a defendant fails to plead or otherwise defend, the clerk of the court will enter an order of default against the defendant. Fed. R. Civ. P. 55(a). Second, upon a plaintiff's request or motion, the court may grant default judgment for the plaintiff. Fed. R. Civ. P. 55(b)(2). Entry of default judgment is left to the court's discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Because granting or denying relief is within the court's discretion, a defendant's default does not automatically entitle a plaintiff to a court-ordered judgment. *Id.* The Ninth Circuit has established seven factors (the "*Eitel* factors") for courts to consider when deciding how to exercise this discretion: (1) the possibility of prejudice to the plaintiff without a judgment, (2) the merits of plaintiff's claims, (3) the sufficiency of the complaint, (4) the amount of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect, and (7) the policy preference for decisions on the merits when reasonably possible. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

At the default judgment stage, the courts consider true all well-pleaded factual allegations in the complaint that are unrelated to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977); Fed. R. Civ. P. 8(b)(6). Courts must ensure the amount of damages is reasonable and supported by the plaintiff's evidence. *See*

*TeleVideo*, 826 F.2d at 917-18; *LG Elecs., Inc. v. Advance Creative Comput. Corp.*, 212 F. Supp. 2d 1171, 1178 (N.D. Cal. 2002) ("The evident policy of [Rule 55(b)] is that even a defaulting party is entitled to have its opponent produce some evidence to support an award of damages."). And "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). The Local Civil Rules further require plaintiffs to support a motion for default judgment with "a declaration and other evidence establishing plaintiff's entitlement to a sum certain . . . " and they must "provide a concise explanation of how all amount were calculated, and shall support this explanation with evidence establishing the entitlement to and amount of the principal claim, and, if applicable, any liquidated damages, interest, attorney's fees, or other amounts sought." LCR 55(b)(2)(A).

## 3.2   This Court has subject matter and personal jurisdiction.

Before entering a default judgment, a court must confirm it has jurisdiction to enter the judgment. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Here, there is no reasonable dispute that the Court has subject matter jurisdiction over this matter. Northwest Administrators filed this case to enforce its clients' rights under federal law: namely, ERISA, 29 U.S.C. § 1132€(1) and (f) and the Taft-Hartley Act, 29 U.S.C. § 185(a). Dkt. No. 5 at 2. The Court also has personal jurisdiction over NCS. ERISA authorizes nationwide service of process and provides that service on a defendant anywhere in the United States is sufficient to establish personal jurisdiction. *Cripps v. Life Ins. Co. of N. America*, 980 F.2d 1261, 1267 (9th Cir.

1992) (citing 29 U.S.C. § 1132(e)(2)). Northwest Administrators properly served NCS within the period provided by Rule 4(m). *See* Dkt. No. 6. *See also* Fed. R. Civ. P. 4(m) (requiring service within 90 days after the complaint is filed). Accordingly, this Court has both subject matter jurisdiction over Northwest Administrators' claims and personal jurisdiction over NCS.

**3.3    The *Eitel* factors favor default judgment.**

**3.3.1    Northwest Administrators will face prejudice absent default judgment.**

Under the first *Eitel* factor, default judgment is favored where "the plaintiff has 'no recourse for recovery' other than default judgment." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) (quoting *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003)). Here, despite timely service of process, NCS failed to defend itself in this litigation. *See* Dkt. As a result, Northwest Administrators will suffer prejudice if default judgment is not entered because it will "be denied the right to judicial resolution" of its claims. *Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 391 (C.D. Cal. 2005). Therefore, the first *Eitel* factor weighs in favor of default judgment.

**3.3.2    Northwest Administrators adequately alleged and supported its claim for damages.**

The second and third *Eitel* factors are often analyzed together. They require the plaintiff to "state a claim on which the [plaintiff] may recover." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (internal citation omitted). The plaintiff must bring claims that "cross the line from conceivable to

plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). At the default judgment stage, the court takes "'well-pleaded factual allegations' in the complaint 'as true'"; however, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps*, 980 F.2d at 1267.

Northwest Administrators seeks to recover unpaid contributions to a multiemployer trust fund under ERISA. *See generally* Dkt. No. 5. *See also* 29 U.S.C. § 1132(a)(3) (establishing a fiduciary's right to sue to enforce the terms of multiemployer trusts). To successfully assert this claim, Northwest Administrators must prove: (1) the Trust is a multiemployer trust; (2) the CBA and Trust Agreement obligated NCS to make employee benefit contributions; and (3) NCS failed to make contribution payments. *See Bd. of Trs. of the Sheet Metal Workers Health Care Plan of N. Cal. v. Gervasio Env't Sys.*, No. C03-04858, 2004 WL 1465719, at *2 (N.D. Cal. May 21, 2004) (stating the elements of a claim to recover unpaid contributions under ERISA).

Northwest Administrators has adequately alleged and supported these elements. Northwest Administrators' complaint and supporting documents show: (1) the Trust was set up as a multiemployer trust under ERISA and the Labor Management Relations Act, Dkt. No. 5 at 1-2; Dkt. No. 10-2; (2) the CBA and Trust obligated NCS to make employee benefit contributions, Dkt. No. 5 at 2; Dkt. No. 10-2 at 14; Dkt No. 12-3 at 56; and (3) NCS failed to make timely contributionsfor October 2022 and failed to make contributions for November 2022. Dkt. Nos. 9 at ¶ 10-11; 12-4 at 2. Because these elements have been adequately alleged and supported, these two factors weigh in favor of default judgment.

### 3.3.3    The sum of money at stake is proportional to the allegations against NCS.

The fourth *Eitel* factor weighs in favor of default if "the recovery sought is proportional to the harm caused by defendant's conduct." *Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010).

Northwest Administrators seeks to recover the following damages: (1) $65.58 in unpaid contributions; (2) $133.35 in liquidated damages; (3) $9.56 in interest; (4) $1509 in attorneys' fees; and (5) $532 in litigation costs. Dkt. No. 9-5 at 1. In total, Northwest Administrators seeks to recover $2,249.49. The court finds that this amount is proportionate to NCS's conduct of failure to contribute to the required contributions. Northwest Administrators seeks only the remedy available under the parties' contracts and thus, the court concludes that this is proportional to the harm caused by NCS's conduct. Here, the fourth *Eitel* factor weighs in favor of default judgment.

### 3.3.4    There is no dispute as to the material facts.

The fifth *Eitel* factor weighs in favor of a default judgment if there is no dispute as to the material facts of the case. *Eitel*, 782 F.2d at 1471. NCS failed to appear and the Court must accept all well-pleaded allegations in the complaint as true, other than those related to damages. *TeleVideo*, 826 F.2d at 917-18. Because nothing in the record suggests any factual disputes, this factor also weighs in favor of default judgment.

### 3.3.5    The record does not show excusable neglect.

Courts may consider whether circumstances surrounding a party's failure to respond are because of excusable neglect. *Eitel*, 782 F.2d at 1472. Excusable neglect may "be lacking where a defendant was properly served with the complaint and notice of default judgment." *Indian Hills Holdings, LLC v. Frye*, 572 F. Supp. 3d 872, 889-90 (S.D. Cal. 2021) (citation omitted). Here, Northwest Administrators timely served NCS with a summons and copy of the complaint on March 30, 2023. Dkt. No. 6. NCS's deadline to answer the complaint was April 20, 2023. *See* Fed. R. Civ. P. 12(a)(1)(A)(i) (stating that a defendant must serve an answer within 21 days of service with the complaint and summons). NCS did not file an answer, nor did it file a motion under Fed. R. Civ. P. 12. *See generally* Dkt. Northwest Administrators filed its motion for default on May 31, 2023. Dkt. No. 9. Nothing in the record indicates that NCS was without notice of the action or was misled by Northwest Administrators. The Court thus concludes that NCS's failure to respond was not due to excusable neglect. Therefore, the sixth *Eitel* factor also weighs in favor of default judgment.

### 3.3.6    Public Policy favors a decision on the merits.

There is a preference for deciding cases on the merits, but this preference is not absolute. *PepsiCo*, 238 F.Supp.2d at 1177. If the defendant's "failure to answer [a c]omplaint makes a decision on the merits impractical," the "preference to decide cases on the merits does not preclude a court from granting default judgment." *Id.* (internal citations omitted). Rule 55(b) permits entry of default judgment in

1

2

situations where the defendant refuses to litigate. Fed. R. Civ. P. 55(b). Thus, the final *Eitel* factor weighs in favor of default judgment.

3

4

Because all the *Eitel* factors weigh in favor of default judgment, the Court concludes that default judgment is warranted and looks next at the recovery.

5

6

### 3.4    The Court awards $2,249.49 in damages and attorneys' fees.

7

8

9

10

11

12

13

14

While a plaintiff does not need to specify an exact amount in their complaint to prevail on a motion for default, the default judgment amount "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). The Local Civil Rules require plaintiffs to support a motion for default judgment with "a declaration and other evidence establishing plaintiff's entitlement to a sum certain…" LCR 55(b)(2).  The plaintiff must provide a "concise explanation of how all amounts were calculated" and "[i]f the claim is based on a contract, plaintiff shall provide the court with a copy of the contract and cite to the relevant provisions." LCR 55(b)(2)(A).

15

16

17

18

19

20

21

22

Here, the damages Northwest Administrators seeks to recover are the same type requested in the complaint, but Northwest Administrators is no longer requesting any sort of injunctive relief. Dkt. No. 5 at 3-4 (requesting unpaid contributions, liquidated damages, accrued interest, attorneys' fees, and costs, as well as requesting that Defendant be compelled to rend a monthly accounting to Northwest Administrators' attorneys). The CBA and Trust agreement contain specific provisions for calculating contributions, interest, and liquidated damages. Dkt. No. 10-2 at 14.

23

1

2

Northwest Administrators filed a declaration with a spreadsheet that shows

the damage and interest accrued. *See* Dkt. No. 12-4. Northwest Administrators has

3

also provided copies of the relevant contracts and provisions. *See* Dkt. Nos. 12-1; 12-

4

3; 10-2. The Court concludes that these exhibits meet the requirements of the local

5

rules and Northwest Administrators may recover $65.58 of contributions, $133.35 of

6

liquidated damages, and $9.56 of interest.

7

Northwest Administrator's also requests $1,509 in attorney's fees and $532 in

8

litigation costs, pursuant to the terms of the Trust agreement. Dkt. Nos. 9 at ¶ 12-

9

13; 10-2 at 14. NCS agreed to pay "[a]ll reasonable attorney's fees incurred by the

10

Trust Fund in connection with the delinquency . . . " Dkt. No. 10-2 at 14. Northwest

11

Administrators attorneys filed an exhibit describing the tasks performed by their

12

law firm in this case, hourly billing rates, and orders from this District approving

13

their firm's hourly rates. Dkt. No. 9-3. Northwest Administrators also seeks to cover

14

litigation costs consisting of a filing fee and process service fee for this court. *Id.*

15

Importantly, Northwest Administrators does not seek to recover attorneys' fees

16

incurred in responding to the Court's order to show cause requesting more and

17

updated documents supporting its motion for default. *See Duby Indus. One, LLC v.*

18

*Goldenwest Laundry & Valet Servs., Inc.,* No. SACV 15-1545 AG (KESX), 2016 WL

19

11744426, at *2 (C.D. Cal. Sept. 26, 2016) ("[T]he Court is not inclined to award fees

20

for unnecessary time spent correcting mistakes made in seeking default

21

judgment.").

22

The Court finds that the billing rates, tasks performed, time spent, and

23

litigation costs are reasonable and recoverable. *See* Dkt. No. 10-2 at 14. Northwest

Administrators may recover the $1,509 in attorneys' fees and $532 in litigation costs it seeks from NCS.

## CONCLUSION

Accordingly, the Court GRANTS Northwest Administrators' motion for default judgment and AWARDS it damages in the amount of $65.58 for missing contributions, $133.35 in liquidated damages, $9.56 in interest, $1,509 in attorneys' fees, and $532 in litigation costs, totaling $2,249.49.

Dated this 28th day of November, 2023.

Jamal N. Whitehead
United States District Judge